IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

IN THE MATTER OF:

ROCKWOOD SQUARE, LLC.,

    DEBTOR.

CASE NO: 09-32078-DOT

## AMENDED PLAN OF REORGANIZATION

**ROCKWOOD SQUARE, LLC.**, the above named Debtor, proposes the following Plan of Reorganization with its creditors:

## ARTICLE I
## DEFINITIONS

The following terms, when used in this Plan, shall, unless the context otherwise requires, have the following meanings:

    1.01 "Allowed Claim " shall mean a claim:

    (a) in respect of which a proof of claim has been filed with the Court on or before the applicable Bar Date, as hereinafter defined; or

    (b) which is scheduled in the schedules of assets and liabilities and statement of financial affairs of the Debtor prepared and filed with the Court which is not listed as either disputed, contingent or unliquidated as to amount; and, in either of the foregoing cases;

    (c) to which no objection to the allowance thereof is interposed; or

    (d) to which, if objection is interposed, the claim is allowed by an order of judgment which is no longer subject to initiation or continuation of appeal or certiorari proceeding.

    1.02 "Allowed Secured Claim" shall mean an Allowed Claim arising on or before the petition date that is secured by a valid lien, as hereinafter defined, on property of the Debtor, which lien is not void or voidable under state or federal law, including any provision of the Bankruptcy Court to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan or, in the absence of an agreement, as determined in accordance with Sec. 506 of the Bankruptcy Code) of the interest of the holder of such Allowed Claim pursuant to this Plan. That portion of such Allowed Claim exceeding the value of the security held therefore shall be an Allowed Unsecured Claim.

1.03 "Allowed Unsecured Claims" shall mean all Allowed Claims which are claims other than Priority Claims or Allowed Secured Claims.

1.04 "Bankruptcy Code" shall mean Sec. 101 et. seq. of Title 11 of the United States Code, as amended from time to time.

1.05 "Bar Date" shall mean any particular deadline established by the Court pursuant to Bankruptcy Rule 3003(c)(3) after which (i) any proof of claim filed has no effect on this Plan, and (ii) the holder of such proof of claim has no right to participate with other creditors under the Plan.

1.06 "Claim" shall have the meaning given in Sec. 101(4) of the Bankruptcy Code.

1.07 "Class" shall mean any class into which Claims are classified pursuant to Article II hereof.

1.08 "Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the Court.

1.09 "Court' shall mean the United States Bankruptcy Court for the Eastern District of Virginia, presiding over reorganization cases, or if necessary, the United States District Court for said district having original jurisdiction over said reorganization case.

1.10 "Creditor" shall mean all persons holding claims against the Debtors.

1.11 "Debtor" shall mean Rockwood Square, LLC., the debtor in this Chapter 11 case.

1.12 "Effective Date "shall mean the date which is thirty (30) calendar days after the date on which the Order of Confirmation is no longer subject to appeal or certiorari proceeding, on which date no such appeal or certiorari proceeding is then pending and on which date the conditions to the effectiveness of the Plan set forth in the Plan have been satisfied in full.

1.13 "Lien" shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation including, without limitation, any judicial or equitable lien, security interest, mortgage, deed of trust and statutory lien as defined in Sec. 101 of the Bankruptcy Code.

1.14 "Plan" shall mean this Amended Plan or Reorganization in its present form or as it may be amended or supplemented from time to time.

1.15 "Priority Claim" shall include all Claims which are entitled to priority pursuant to Sec.507 of the Bankruptcy Code.

1.16 "Pro rata" shall mean with respect to any Allowed Claim in any Class, the proportion that the amount of such Allowed Claim bears to the aggregate amount of all of the Allowed Claims of such Class.

1.17 "Secured Claims" shall mean those claims whose payment is secured by a Lien.

1.18 "Unsecured Creditors" shall mean the holders of Allowed Unsecured Claims.

**UNDEFINED TERMS**

A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 For the purposes of distribution under this Plan, administrative, taxes and priority claims, secured claims, and general unsecured claims shall be classified as follows:

Class 1 - Administrative Expenses

Class 2 - Taxes and Priority Claims

Class 3 - Secured Creditors

Class 4 - General Unsecured Creditors

All classes are impaired under the Plan. In the event of a controversy as to whether any class of Claims or Interest is impaired under the Plan, the Bankruptcy Court, after notice and an opportunity for a hearing, shall determine such controversy. All impaired classes of Claims and Interests shall receive the Distributions set forth in Article III on account of and in complete satisfaction of all Claims and Interests against the Debtor, and shall have no further rights or remedies against the Debtor or any of their assets or properties, expect as specifically set forth in the Plan.

## ARTICLE III

### PERFORMANCE UNDER THE PLAN
### TREATMENT OF THE CLASSES

3.1 Class 1: Administrative Expenses

The reasonable fees and expenses of those professional persons employed by the Debtor are administrative expenses. On May 28, 2009, an order was issued by the Court to appoint Richard Knapp and Associates (Knapp) attorney for debtor and on November 3, 2009 the Court issued an order approving Knapp's first application for payment in the amount of $34,240.00 and $108.66 of out of pocket expenses through August 29, 2009. Knapp's total expenses are not expected to exceed $50,000.00. Knapp will be paid $12,500.00 in four (4) payments, due at the time of each sale event, with the last payment including a base amount of $12,500.00 plus any accrued interest (at a rate of 8% per annum on the outstanding balance) then due at the time of the last sale event (see **Exhibit E** "Rockwood Square Sell Down – Five Year Plan" for detail).

3.2 Class 2: Taxes and Priority Claims

The Debtor owes pre-petition delinquent property taxes (representing the second half tax payment for tax year 2008's property taxes) to Chesterfield County in amount of $18,933.09. An additional post-petition tax payment of $16,332.42 (representing the first half tax payment for tax year 2009's property taxes) was due on June 5, 2009. Another post-petition tax payment of $16,332.42 (representing the second half tax payment of tax year 2009's property taxes) was due December 7, 2009. The combined past due second half of 2008, past due first half of 2009, and past due second half 2009 taxes total $51,597.93. The first half 2010 property taxes due (estimate with penalty) are $17,500.00. Second half 2010 property taxes, and property taxes for tax years 2011, 2012, 2013, 2014, and the first half of 2015, will paid as they come due, with Debtor escrowing $1/12^{th}$ of the estimated amount of each tax year payment on a monthly basis. Initially, this monthly escrow will be $1,458.33/month. The monthly escrow will be maintained in an interest bearing account at VCB. The monthly escrow will cover $1/12^{th}$ of the taxes on Parcels A through E. This class of creditors will be paid at the end of year two (2) and the end of year (3) in the amounts specified in **Exhibit E**.

3.3 Class 3: Secured Creditors.

Debtor has three (3) secured creditors, each with a note secured by a mortgage instrument on real property which is comprised of five (5) parcels of land (see **Exhibit A** attached):

| | | |
|---|---|---|
| VCB | Parcels A, B, & D | $3,558,750.00 |
| FCB | Parcel C | $2,112,000.00 |
| Lowe's | Parcel E | $ 172,940.49 |

Debtor will make monthly adequate protection payments to each creditor, until each secured creditor is paid in full, as follows:

VCB        July 1, 2010 through December 31, 2010: **$11,862.50/month**
*($3,588,750.00 \* 4.00% = $142,350.00 / 12 months = $ 11,862.50)*

               January 1, 2011 through December 31, 2011: **$17,943.75/month**
*($3,588,750.00 \* 6.00% = $215,325.00 / 12 months = $ 17,943.75)*

               January 1, 2012 through June 30, 2015: **$23,122.37/month**
*($3,588,750.00 amortized over twenty-five years at 6% int = $23,122.37/month payment)*

FCB        July 1, 2010 through September 30, 2010: **$5,720.00/month**
*($2,112,000.00 \* 3.25% = $ 68,640.00 / 12 months = $ 5,720.00)*

               October 1, 2010 through September 30, 2011: **$ 6,600.00/month**
*($2,112,000.00 \* 3.75% = $ 79,200.00 / 12 months = $ 6,600.00)*

October 1, 2011 through June 30, 2015: **$ 7,480.00/month**
*($2,112,000.00 \* 4.25% = $ 89,760.00 / 12 months = $ 7,480.00)*

Lowe's   July 1, 2010 through September 30, 2010: **$468.38/month**
($   172,940.49 \* 3.25% = $   5,620.57 / 12 months = $     468.38)

October 1, 2010 through September 30, 2011: **$540.44/month**
($   172,940.49 \* 3.75% = $   6,485.27 / 12 months = $     540.44)

October 1, 2011 through June 30, 2015: **$612.50/month**
($   172,940.49 \* 4.25% = $   7,349.97 / 12 months = $     612.50)

\*\*NOTE: All of the adequate protection payments listed above will be adjusted based on principal reductions to the VCB, FCB, and or Lowe's debt when sale events occur.

VCB has agreed to provide up to $250,000.00 over the course of the next twenty four (24) months, under the loan documents which govern their Pre Petition debt, to pay for costs associated with stabilizing its Parcel B collateral (see **Exhibit B** for the "Phase I (Parcel B)" budget and see **Exhibit C** for Parcel B's As Is Rent Roll, As Projected Rent Roll, and Projected Income/Expense Information). Parcel B will be sold at the end of year two (2) of the plan, with net sales proceeds being used to pay off Post Petition $250,000.00 VCB debt and to reduce the principal balance of the Pre Petition VCB debt, plus pay past due property taxes due on Parcel B (see **Exhibit E** "Rockwood Square Sell Down – Five (5) Year Plan" for detail).

VCB will the provide an additional $150,000.00 after the sale of Parcel B under its existing loan documents which govern their Pre Petition debt to pay for costs associated with stabilizing its Parcel A collateral (see **Exhibit B** for the "Phase II (Parcel A)" budget and see **Exhibit D** for Parcel A and Parcel D's As Is Rent Roll, As Projected Rent Roll, and Projected Income/Expense Information). Parcel A, and Parcel D (which will be ground leased at the time of sale) will be sold at the end of year three (3) of the plan, with net sales proceeds being used to pay off $150,000.00 VCB Post Petition debt, the balance carried forward of the VCB Pre Petition debt, pay the Lowe's Pre Petition debt in full. The Lowe's collateral (Parcel E) will be pledged as additional collateral to secure the FCB debt (see **Exhibit E** "Rockwood Square Sell Down – Five Year Plan" for detail).

\*\*NOTE: To the extent VCB advances additional monies to Debtor, interest on those monies will accrue at the rates listed above in the VCB section. Interest payments will be made monthly on any additional monies advanced by VCB until such time as those additional advances are paid in full.

At the end of year four (4) of the plan, Parcel C (FCB collateral) will be sold, with the net sales proceeds being used to reduce the FCB Pre Petition debt by $1,550,000.00 to $562,000.00 (see **Exhibit E** "Rockwood Square Sell Down – Five Year Plan" for detail).

5

At the end of year five (5) of the plan, Parcel E (which will be FCB collateral subsequent to the payoff at the end of year three (3) of the Lowe's debt) will be sold, with the net sales proceeds from the sale paying FCB in full (see **Exhibit E** "Rockwood Square Sell Down – Five Year Plan" for detail).

3.4 Class 4: General Unsecured Creditors:

The debtor has unsecured creditors as follows:

| | |
|---|---:|
| A-1 Commercial Grounds: | $ 3,700.00 |
| Beale, Davidson, Etherington: | $ 2,267.67 |
| Chesterfield County Utilities: | $ 19.14 |
| Dominion Power: | $ 1,429.92 |
| Imagination Station: | $ 4,950.00 |
| Janezic Building Group: | $ 14,480.00 |
| Johnson Ayers and Matthews: | $ 255.00 |
| Jord Construction, L.L.C.: | $ 64,035.32 |
| Kimball Roofing: | $ 12,544.32 |
| MG Miller Valuations: | $ 5,500.00 |
| Planet Protection: | $ 460.00 |
| Regions Bank: | $ 7,600.00 |
| Roof Systems of VA: | $ 758.50 |
| Waste Management: | $ 514.45 |
| TOTAL | $118,514.32 |

This class of creditors will be paid at the end of year three (3) of the plan.

## ARTICLE IV
## EXECUTION OF THE PLAN

Subject to confirmation of the plan, so long as any payment or distributions of property to creditors provided in this Plan remain unpaid, the reorganized Debtors shall:

4.1   Pay and discharge all taxes, assessments and governmental charges or levies imposed upon them or upon their income or profits, or upon any properties belonging to them prior to the date upon which penalties attach, and all lawful claims which, if unpaid, might become a lien or charge upon any said properties, provided that they shall not be required to pay any such tax, assessment, charge, levy or claim that is being contested in good faith by proper proceedings or that was assessed prior to the Petition Date.

4.2   Maintain all necessary insurance, with responsible and reputable insurance companies or associations in such amounts and covering such risks as a reasonably prudent individual would consider proper.

4.3     Comply with all the requirements of all applicable laws, rules, regulations and orders of any governmental authority, noncompliance of which would materially adversely affect his business or credit or any collateral.

4.4     Maintain and preserve all of its properties, necessary or useful in the proper conduct of their business, in good working order and condition, ordinary wear and tear excepted.

4.5     Pay all liabilities, claims or charges incurred or arising from and after the Confirmation Date.

This Plan generally provides for the administration of the assets of the Debtor's estate for the benefit of holders of claims against the Debtor and equity interests in the Debtor. The following prescribes the procedure for determining which claims and interest are entitled to participate in the distribution:

4.6     Allowance of Claims: Only Allowed Claims and Allowed Interests are treated herein. Unless and until a claim or interest becomes an Allowed Claim or Allowed Interest, the holder of such claim or interest shall not be entitled to any distribution or other treatment herein. With respect to the allowance of claims and equity interest, the following is applicable:

"Allowed" or "Allowed Claims" means any claim against the Debtors (a) with respect to which a proof of claim has been timely filed with the Bankruptcy Court; or (b) which is (i) listed in the schedules of creditors that the Debtor prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 (b), as amended up to the Confirmation Date, and (ii) not listed as disputed, contingent, or unliquidated ; or (c) a Tardily Filed Claim which qualifies under Section 726(a)(2)(C)(i) and (h) of the Bankruptcy Code; or (d) which is designated as an Allowed Claim in the Plan. In the case of (a), (b), and (c), a claim is an Allowed Claim only if no objection to the allowance has been raised within any applicable period for raising such an objection, or the Bankruptcy Court enters a Final Order allowing the claim. Unless otherwise specified in the Plan, the term "Allowed Claim" shall not included interest on such claim for any period from and after the Petition Date, unless sufficient funds are available under the Plan for payment of interest in the priority specified under Section 726 of the Bankruptcy Code.

"Allowed Administrative Claim" means an Administrative Claim which (a) the Debtors determine should be paid as an expense of administration under Section 503(b) of the Bankruptcy Code; or (b) the Bankruptcy Court has entered a Final Order allowing such Administrative Claim, but only to the extent allowed under the Final Order.

4.7     Pursuant to an order of the Bankruptcy Court, the last day for creditors and other than holders of Administrative Claims to timely file proofs of Claims was August 4, 2009. Such deadline shall apply with equal force to claims based upon rejection of executory contracts and unexpired leases. The claim of any creditor who fails to file a proof of claim prior to such deadline will be deemed to be a Tardily Filed Claim under the terms of the Plan.

4.8     Under the terms hereof, the Debtor is charged with the duty of administering all claims and equity interests against the estate. All objections to allowance of claims shall be filed with the Bankruptcy Court and served on the Debtor and any other parties required by the Bankruptcy Rules or Local Rules of the Bankruptcy Court within 60 days after entry of the Confirmation Order. Once an objection to allowance of claim or equity interest is filed, such claim or equity interest is deemed to be a Disputed Claim or a Disputed Interest under the Plan until such time as the Bankruptcy Court enters a Final Order regarding such claim.

## ARTICLE V
## LEGAL EFFECTS OF THE PLAN

5.1     Except as provided in the Confirmation Order, the rights afforded hereunder and the treatment of claims and interest hereunder will be in exchange for and in complete satisfaction, discharge, and release of all claims and termination of all interests, including any interest accrued on claims from the Petition Date. Except as provided in the Confirmation Order, confirmation will discharge the Debtor form all claims or other debts that arose before the Confirmation Date and all debts of the kinds specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (b) a claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code, or (c) the holder of a claim based on such debt has accepted the Plan.

5.2     As of the Confirmation Date, except as provided herein or the Confirmation Order, all entities will be precluded from asserting against the Debtor's estate or its property, any other or further claims, debts, rights, causes of action, liabilities or equity interest based upon any act, omission, transaction or other activity or any nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such claims and other debts and liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will avoid any judgment obtained against Debtor at any time, to the extend that such judgment relates to a discharged claim.

5.3     Except as proved herein or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions against Debtor on account of any such discharged claims debts, liabilities or terminated Equity Interests or rights (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment , award, decree, or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing any action, in any manner or in any place, that does not comply with or is inconsistent with the Provisions of this Plan.

# ARTICLE VI
# DISTRIBUTIONS AND CONDITIONS

6.1    On the Effective Date, or as soon thereafter as practical, the Reorganized Debtor or its attorney shall act as disbursing agent and shall take such action as may be necessary to make the Distributions in accordance with the terms of the Plan.  As conditions precedent to receiving any Distributions under the Plan, however, there shall have been a resolution by Final Order of the Bankruptcy Court of all objections to any Disputed Claims.

6.2    For a period of two (2) years following the Effective Date, Reorganized Debtor shall retain any unclaimed Distributions for the benefit of the holders of Allowed Claims entitled thereto under the Plan which have failed to claim such property and for the benefit of holders of Disputed Claims.  At the end of two (2) years following the latter of the Effective Date or a Final Order of the Bankruptcy Court applicable to any Disputed Claim or any Distribution that is subject to a condition precedent as described above, the holders of such Claims theretofore entitled to Distributions held in such reserve shall cease to be entitled thereto and thereupon such Distributions shall become property of the Reorganized Debtor.

6.3    Nothing herein shall prohibit the Debtor from selling any of its property or refinancing any of its indebtedness prior to the substantial completion of the terms of the Plan.  Such sale or refinancing may be made subject to or by assumption of any one or all of the Allowed Secured Claims which are secured by continuing, post petition, valid perfected liens/security interest upon any property sold or refinanced.

# ARITCLE VII
# ACCEPTANCE OR REJECTION OF PLAN

7.1    Classes Entitled to Vote:  Each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan.  Any unimpaired class of Claims shall be deemed to have accepted the Plan.  Any class or Claims or Equity Interests that will not receive or retain any property on account of such Claims or Equity Interests shall be deemed to have rejected the Plan.

7.2    Class Acceptance Requirement:  A class of Claims shall have accepted the plan if it is accepted by at lease two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted for the Plan.

7.3    Cram down:  If any class of Claims shall fail to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, at the request of Debtor, the Bankruptcy Court may confirm the plan in accordance with § 1129(b) of the Bankruptcy Code  In the event that confirmation is required under § 1129(b) of the Bankruptcy Code, the Debtor reserves the right to amend or otherwise modify the Plan in accordance with § 1129(b)(2) of the Bankruptcy Code.

## ARTICLE VIII
## DISCHARGE

8.1   Except as otherwise provided in the Plan or Confirmation Order, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of any and all debts or and Claims against the Debtor and their guarantors of any kind whatsoever that arose at any time before the entry of the Confirmation Order, including but not limited to all principal and any and all interest accrued thereon, pursuant to Section 1141(d)(1) of the Bankruptcy Code.  The discharge of the Debtor shall be effective as to each Claim, regardless of whether proof of claim thereof was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept Plan.

## ARTICLE IX
## EXECUTORY CONTRACTS AND LEASES

9.1   Except as hereinafter provided, all executory contracts and unexpired leases ("Agreements") not heretofore assumed by the Debtor (whether or not the subject of an order by the Bankruptcy Court) are intended to be rejected by the Reorganized Debtor, from and after the Effective Date; provided that the Debtors reserve the right and privilege to assume an additional Agreements up to the time of entry of the Confirmation Order, absent other arrangements between the Debtors and the other parties to any Agreements so assumed.  The Claim for any deficiency, loss or damage realized or sustained by reason of such rejection and which is allowed as a Claim in this case, shall be entitled to be treated as, and shall have the same rights and privileges as unsecured creditors whose Claims are dealt with as Class 4 claims.  Such creditors shall file proof of the general Unsecured Claim and appropriate elections within such time as is fixed by the Bankruptcy Court.

## ARTICLE X
## REVESTING

10.1   Except as provided for in the Plan or in the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with full ownership of, dominion, and control over its assets of every kind whatsoever and wherever located, free and clear of all Claims, liens, mortgages, security interests, charges and other interests of creditors arising prior to the respective filing date of each petition herein.  Upon the Effective Date, the Reorganized Debtor shall operate its business free of any restrictions or the Bankruptcy Code, the Bankruptcy Court, or the United States Trustee.

## ARTICLE XI
## AMENDMENTS AND WAIVERS

11.1   After the order of confirmation and except as otherwise specifically set forth in the Plan, any term of the Plan may be waived by the party affected by the term to be waived. After the order of confirmation, the Reorganized Debtor, may, with the approval of the Court and so long as it does not materially or adversely affect the interests of Creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan by whatever means is necessary and reasonable to carry out the purposes of the Plan.

11.2  After the Confirmation Date, the Reorganized Debtor may, with the approval of the Bankruptcy Court, modify this Plan as to any class, even though such modification materially affects the rights of Creditors in such class; provided, however, such modifications must be accepted by at least sixty-six and two-thirds (66-2/3%) in amount of Allowed Claims voting in such class and fifty percent plus one (50% + 1) in number of Allowed Claims voting in such class; and provided further, that additional disclosure material needed to support such modification shall be approved by the Court in a manner consistent with § 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules.

## ARTICLE VII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case:

12.1  To determine the allowance or disallowance of and the amount, priority, validity and discharge ability of claims and interests,

12.2  To interpret the Plan and hear all disputes arising in connection with execution of this Plan.

12.3  To fix and approve allowances of compensation and other administrative expenses, including, if appropriate, payments to be made in connection with this Plan,

12.4  To decide controversies and disputes arising under or in connection with the Plan.

12.5  To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, and to modify to amend the Plan.

12.6  To enforce all causes of action which may exist in behalf of the Debtor.

12.7  To issue any order, process or judgment necessary or appropriate to carry out the provisions of the Plan.

## ARTICLE XIII
## REQUEST FOR CONFIRMATION

13.1  If the requirements of all provisions of Sec. 1129(a) of the Code, except paragraph (8) thereof, are met with regard to the Plan, Debtor hereby requests confirmation of the Plan pursuant to Sec, 1129(b) of the Code.

## ARTICLE XIV
## RESERVATION OF POWERS

14.1  Nothing in the Plan shall be construed to be a waiver of Debtor's avoidance powers under Chapter 5 of the Code, and Debtor expressly reserves such avoidance powers.

## ARTICLE XV
## EFFECT OF CONFIRMATION

15.1  As of the Effective Date, the effect of confirmation shall be as provided in Sec. 1141 of the Code.

## ARTICLE XVI
## PAYMENTS TO THE UNITED STATES TRUSTEE/POST CONFIRMATION REPORTING

16.1  Within ten (10) days of the Date of Confirmation, absent a stay of the Order of Confirmation, all fees due to the Office of the United States Trustee which shall be due on the Date of Confirmation will be paid and simultaneously the Debtor/Reorganized Debtor will provide the United States Trustee an appropriate affidavit indicating the cash disbursements for any relative period in which the Debtor has failed to file a monthly operating report. Furthermore, the Debtor/Reorganized Debtor shall timely pay to the United States Trustee, any and all post confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the Court.

16.2  Debtor/Reorganized Debtor shall submit to the United States Trustee post-confirmation monthly operating reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed, or closed by the Court.

DATED: _____4/27/10_____, 2010

ROCKWOOD SQUARE, L.L.C.
By: Southeast Properties I, L.C. sole member

By: _____
   Christopher B. White, manager

BY:     Robert C. Smith  /s/
   Robert C. Smith
   Richard Knapp and Associates
   2800 Patterson Avenue
   Suite 101
   Richmond, Virginia 23221